Next this morning is United States v. Morgan, 2431.41. Counsel? May it please the court, William Blaser for the United States. I'll do my best to reserve three minutes for rebuttal. The district court erred in this case by striking down section 922.0's prohibition on possession of machine guns, and this court should reverse. Argument here this morning is pretty straightforward based on the Supreme Court's decision in Heller, which said that the Second Amendment protects only those firearms that are typically possessed by law-abiding citizens for lawful purposes, such as self-defense. Before the Supreme Court's decision in Bruin, all of the circuits to consider the question? Yeah, I hate to interrupt you so early, but you're saying Heller said that? Heller said that, yes, sir. Well, on page 625, I don't think that's exactly the word self-defense, isn't it, in the excerpt in 625? And I don't think it's in the excerpt in 627 that you relied on. Your Honor, I believe, and I apologize if I can't point to the exact page number, I believe it's earlier, perhaps 624. In Heller's discussion about the types of firearms that were in common use and that were brought by militia members, there it referred to self-defense. And so I agree that subsequently when it said those typically possessed by law-abiding citizens for lawful purposes, it didn't add self-defense. But Heller also elsewhere explained that those lawful purposes are self-defense, hunting, and militia service. So before Bruin, the courts of appeals were in agreement that that part of Heller decided the question and that machine guns could be constitutionally regulated under the Second Amendment. So really, the only question is whether Bruin and subsequently Rahimi changed anything in that analysis and whether Bruin requires, as the defense and the district court suggest, that this court look for sort of a one-to-one analog of an exact historical regulation that's similar to a regulation on machine guns. Well, let me ask you. Is the common use issue a Bruin step one question or a Bruin step two question? So, Your Honor, this court's decision in the Rocky Mountain Gun Owners versus Polis case indicates that it's a step one question. But we don't think that this court needs to sort of get into those kind of questions. Because whether you can treat it as step one, step two, text, history, tradition, everything indicates that that rule exists. The Supreme Court has said it exists. Doesn't it go to the definition of arm, which would be in step one? Your Honor, yes, it does to a certain extent. Although, to be clear, the government is not arguing that machine guns are not arms in the sense of bearable weapons. They're clearly bearable weapons. But it does go to the types of arms that are protected by the Second Amendment, which depends on the historical understanding of the term arms or perhaps the right of the people to keep and bear arms. Again, I don't think that the court needs to sort of get hung up on the step one. It might matter if it affects who has the burden of proof. Your Honor, let's say we have the burden of proof. Let's say it's entirely a step two question. We're still happy to bear that burden. But I think that the reason that you don't need to decide those questions is that the Supreme Court has already decided it. I wouldn't be happy to bear the burden if we don't think you admit it on step two. Well, I suppose we wouldn't, then, Your Honor. They wouldn't qualify. Right. But let me just to explain. The Supreme Court said that the common use limitation accords with history. So it said this twice in Heller. The court said, the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right. And then a few paragraphs later, again, Miller said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons. And Heller went on to cite 12 historical sources. So whether this is a textual question, whether it's text plus history and tradition, we think Heller has already decided the question. And therefore, this court needn't re-examine whether or not that common use limitation accords with history, and need only consider the question of whether machine guns are those types of weapons that are in common use or typically possessed by law-abiding citizens for lawful purposes. The district. No. I'm sorry. That's not what you just said a couple of minutes ago. Lawful purpose, i.e. self-defense. Yes. Do you mind if I ask one question, Genevieve? Yeah. So how do the three of us do this empirical analysis to say, OK, well, there's 170,000 registered owners of machine guns. And let's say 25% of those are members of a Crips gang. 30% are collectors, which, as you just said, that is not a protected purpose. Only for self-defense. So how many of those 170,000 registered owners of machine guns, or 740,000, whatever you call it, are used of machine guns for self-defense? Or is that empirical question belong to a district court that are equipped to decide factual, empirical questions than I am? So, Your Honor, we think this court is well-equipped to decide the question. Because the sort of top-line question is the constitutional question. And the statistical evidence that we've cited is sort of one component of that. But it's certainly not just a numerical question. And I don't think that the court should focus sort of myopically on the number of machine guns that are possessed in the United States by particular groups of people. Because the common view. I'm not worried about that. I'm worried about the qualifier that you pointed out earlier. Forget if it's a million, or 100,000, or 200,000. How many of those owners of machine guns use it for self-defense? Your Honor, I would say a very, very small number. But the government's position is not necessarily that the Constitution wouldn't protect the use of machine guns by those who have complied with the National Firearms Act prior to 1986 and who have registered machine guns. We're not disputing that they possess those firearms for lawful purposes. Our contention is that machine guns are not the kind of weapons that are typically possessed by law-abiding Americans in general for lawful purposes, such as self-defense, hunting, et cetera. And again, this is why I don't think it's purely a numbers inquiry. This court can look at whether machine guns are well-adapted to lawful purposes, such as self-defense. They're not. They spray bullets at a very high rate and are very difficult to control. This court can look at how legislatures have responded to machine guns over time. And as we point out in our brief, very soon after the advent of machine guns becoming available to the public in the 1920s, states began responding with restrictions. The federal government did within the first decade. This court can simply look at common sense. This court can look at how legislatures, even today, have considered the question. And I think all of these factors together indicate that, as, again, prior to Bruin, the other circuits had unanimously concluded, machine guns are not the kind of firearms that are in common use for lawful purposes. Let me ask you about an argument that Mr. Morgan is making. Why isn't Mr. Morgan correct that machine gun use is not more common today because Congress banned possession in 1986?  Your Honor, I understand the concern that the common use inquiry, in a way, feels circular. But I think there's a few answers to that. First of all, it's not just Section 922-0 that has led to there being very few firearms, very few machine guns possessed today, especially for lawful purposes. There's a whole host of reasons for that, going back to the state laws that I mentioned that were adopted in the 1920s and 30s, and the National Firearms Act, which Congress adopted in 1934, which, at the time, the $200 registration requirement under the National Firearms Act was effectively a prohibition. So although there wasn't a true prohibition in place until 1986, the National Firearms Act dramatically limited the number of machine guns. But I don't think it should be a concern, the sort of circularity of the common use test, because the common use test is just one way of getting at whether or not legislatures have traditionally, throughout our country's history, regulated a particular type of firearm. And so it's true we don't have founding era legislative enactments here, because machine guns didn't exist at the founding era. But as we've demonstrated in our brief, there is a through line of regulation of dangerous and unusual weapons, such as, upon their advent, machine guns. And the common use inquiry is one way of getting at whether these are the kinds of weapons that have gone essentially unregulated since their existence, or whether instead they are those that traditionally have been regulated by legislatures. The Supreme Court has, over the years, provided some dicta that indicates that machine guns could be banned lawfully, despite the Second Amendment. The district court basically said that that's dicta, and I'm not going to follow it. Is that what you think we should do? Your Honor, well, you certainly shouldn't do what the district court did. I think that this court should weigh that dicta very seriously. I don't think that you need to just decide this case purely on that dicta, though, because there's actually part of, I think, more of a core part of Heller that we're relying on here, the common use inquiry. And so Heller's suggestion in dicta that it would be a startling result that a prohibition on machine guns, a regulation on machine guns would be unconstitutional, I think this court should weigh that heavily. This court is bound by Supreme Court dicta. But we think that there's more than just that. And so we wouldn't ask the court to rely solely on that. What about the statement in Heller that M16 rifles and the like may be banned? Is a machine gun like an M16 rifle? Yes, Your Honor, it is. So an M16 is a machine gun that can be, ordinarily, it's selective fire. But it can be fired either semi-automatically or automatically. And I think that seems to be what the Supreme Court was referring to when it mentioned M16 rifles and the like. But one of the guns I would mention here is effectively an AR-15 that's been converted to fire automatically. And it's virtually indistinguishable from an M16 other than the fact that it doesn't have that selective fire mechanism. So for all the reasons that we've laid out in our brief and that we've mentioned here, we think that the district court got this wrong. If the court, I'm happy to address any questions about preservation if the court has them. But as we explain in our reply brief, the district court understood us to be arguing that machine guns are not in common use today and not be the argument that the defense has suggested we made. So the argument is directly before this court. We don't think, Judge Bacarach, that there's any reason for the district court to conduct any additional inquiry into the exact numbers of firearms that are possessed by particular groups. And instead, this court can conclude, as more than three dozen district courts have done since Bruin, and as all the circuits did prior to Bruin, that the Second Amendment does not protect the right to possess machine guns. Do you agree with the district court's definition of arms, that it's anything that can be carried in the hand? Your Honor, that definition was one of the definitions from Heller. And so again, we're not disputing that in one sense, a machine gun is, of course, an arm, right? It's an offensive or defensive weapon. What we argue is that it's not the type of arm that's protected by the Second Amendment. Well, the first step is to decide whether it's protected by the Second Amendment. Correct. Yes, Your Honor. But Heller specifically said that there are types of weapons that are, and weapons effectively are arms, there are types of weapons that are not protected by the Second Amendment. So I guess I'm still struggling. I'm kind of a, you know, I've got a formula. I've got to plug it in. It seems like we're under step one here. Your Honor, and I think that would be consistent with this court's decision in Rocky Mountain gun owners versus police. Which we're bound by, right? That's correct, Your Honor. That would be consistent with that. And the government's view, whether it's step one, step two, text, history, tradition, all of them point in the same direction. And this court can, I think, rely on Heller without sort of drilling down into exactly the right way to analyze it under a particular step of Brown. Well, if we go to step two, and if we follow the Rocky Mountain case and say that we are bound by party presentation, government didn't present much of anything. Your Honor, that's true that we did not below. But again, as we explained in our brief, this court has said that the government can introduce new authority on appeal. And the historical inquiry here isn't a factual inquiry. It's a legal inquiry. And the reason that we didn't introduce a long list of historical authority in the district court is we understood this to be already decided by Heller. Heller did the historical work. It cited 12 historical sources to support the principle, and principles are important, especially after Rahimi, support the principle that weapons that are dangerous and unusual and that are not in common use can be regulated. Counsel, we're on an as-applied challenge. Yes, Your Honor. And it seems like a lot of the arguments we've been hearing sound more like arguments in response to a facial challenge. But Mr. Morgan had particular types of machine guns. And shouldn't the discussion be at that level of specificity if it's an as-applied challenge? Your Honor, certainly this court, I think, can look at the types of weapons that he had. But we think all of our arguments that support machine gun bans in general would support the application of the statute to the particular weapons that he had in this case, a Glock conversion switch that was possessed in connection with a Glock, and the converted AR-15 firearm. So for all these reasons, we'd ask the court to reverse the district court's decision. Thank you. All right. May it please the courts. Dan Hansmeier on behalf of Mr. Morgan. So I guess I will start with this discussion of heller's dicta, because Judge McHugh, you seem to be convinced that maybe it's a problem for me. Well, let me just be clear. I think the problem is the district court just dismissed it. And we have authority that tells us that we're bound as much by the dicta as by the holding. And so I find some difficulty in the analysis of the district court to just tee it up for you. OK, so I think what the district court was saying was a few things. Maybe not as clear as we would like. But one is that the discussion in heller about machine guns was, I mean, the bulk of the discussion comes from a discussion of Miller, which is about the National Firearms Act, which is not a prohibition on the possession of machine guns. So I think that dicta about the National Firearms Act doesn't do much work here, because we're not talking about the National Firearms Act. We're talking about 922 up. But heller didn't limit it to licensing and regulation. Heller said it can be banned. So that's where I was going next. So what they say is M16s and the like. So just to be clear, as an as-applied challenge, this is not an M16 rifle. These are, this is essentially a semi-automatic rifle that can shoot automatically, and a handgun that can shoot automatically. Now, those things are different. You know, you can, like the M16 rifle, that's the military-style rifle that just feeds bullets in. You can shoot, you know, with a semi-automatic rifle, there's a limit to how many bullets are going to come out, because you don't have an unlimited clip, especially with a handgun. You know, I mean, you're going to have less bullets coming out of the clip than you are, you know, those 500-round things that are attached to machine guns. So if this were an M16, I agree, I'd have a problem. Now, the and the like, I don't know what that means. So it could mean, you know, the cannon, machine guns attached to airplanes. Does it mean a converted semi-automatic assault weapon? I don't know if it does. Well, Hendler says a sold-off shotgun can be banned, right? Well, that's true. But that's an entirely different thing, I think. I mean, you know, they're getting at something there. And they talk about that they're arms in common use for lawful purposes like self-defense, right, in order to be an arm protected by the Second Amendment. So the sold-off shotgun aspect of this really comes from Miller. And Miller essentially holds that sold-off shotguns were not, you know, they could be regulated under the National Firearms Act because at the time of the founding, you wouldn't use a sold-off shotgun. A militia person wouldn't bring a sold-off shotgun to militia service. And I think the implication there is that because the gun itself has been altered, it is not something, it can be considered dangerous and unusual. That this isn't. I mean, first of all, there's nothing in Heller that limits that to Miller. It's a broad statement in 625 that you can ban sold-off shotguns. And it has no discussion of the fact that it's altered, nor does it say anything about the M-16s and the like being altered. So where do you pull that it's OK if it's not altered? I don't find that analysis anywhere in the Supreme Court cases. Well, it's in Miller. That's where it's at. Miller talks about how there were regulations at the founding that instructed members of the militia to not bring shortened guns with them. That's where it comes from. I mean, I agree that the discussion in Heller is not well-developed. I can't do anything. I don't know why they said what they said, and they didn't say what they didn't say. It's not. But I think this is the problem with pulling from dicta, is that it's dicta. It wasn't considered. We know that the Second Amendment has limits, because the Supreme Court has told us so. And so we're trying to figure out what are those limits. And the district court said it's an arm. If you could carry it. I mean, if I had a surface-to-air missile that I can carry, is that protected by the Second Amendment? Would you think so? A surface-to-air missile that you could carry? They're shoulder-launched. Yeah. Is that OK? I don't know. What about a hand-held nuclear weapon? I mean, I think by hand-held, with respect to firearms, what Bruin envisioned was something that looked like a firearm. That's how I interpret that language. So I don't interpret Bruin or Heller as talking about the canon. That's not how I read the language. I guess somebody could. That seems a little, I don't know. I don't think the Supreme Court's going to say that. So it has to look like a firearm? Well, it has to be hand-held in the sense that you can hold it in the hand and use it. Hand grenade, fine. Well, that's not a firearm. It's still an arm. An arm. So I mean, I guess one way to think about it is, yes, that's protected by the Second Amendment because it is an arm. But it can be regulated. And a complete prohibition would be fine. How can it be regulated? A grenade? Yeah, what is the principle that we take and apply to other cases to know what can be banned and what can't? So the principle would, well, that's a great question. The grenade would not be covered because it cannot be. I mean, that is something that you can't feasibly use in self-defense. Why not? Somebody's attacking my home. I throw a grenade at them. You know, blow up your home. Well, just like a machine gun. They're attacking my home. I mow them down with a machine gun. I mean, I can use it for self-defense. Well, I think that the machine gun that you have to envision is the gun here. That is not the M16 rifle that's just going to mow them down. I mean, this is essentially an AR-15. Well, there's no dispute it's a machine gun. It fires automatically. Correct. OK. But it's not a gun. It's not a military-style gun like the M16 is my point. Is your point to Judge McHugh that a grenade, it can be used, as she points out, in self-defense, but it's not commonly used in this day and age for self-defense? Is that your point? Right. And you wouldn't use it, I don't think. Well, you might not. I might not. But I don't know that you or I are qualified to opine on what the population of the United States would do. But in any event, so to take a follow-up on Judge McHugh's question, so your point is, well, machine guns are a different kettle of fish. Machine guns are and commonly are used in self-defense in this day and age. How do you know that? What in the, or let me put it this way, because you're a really smart guy. What in the record can we draw upon to say machine guns are commonly used in self-defense in this day and age? Well, I'm not sure if there's statistics on that, to be honest with you. And I don't know how Heller, I don't know what Heller cited to say that handguns are commonly used for self-defense. I guess the way I look at it is more that there are over 170,000 of these things. As far as I'm aware, people with registered machine guns aren't committing crimes. And therefore, the implication is that. Yeah, maybe they're using it for collection, right? But collection's not a right of the militia to bear arms. You don't have a Second Amendment right to collect nuclear weapons, do you? I mean. I mean, the collection thing is out. And the government, we haven't talked about that in the brief, so I would have to think about that. I don't know how that plays into that. Well, I guess the only way that I think it factors in is exactly what your adversary said, is if we're talking about what did Heller mean on page 627 when it adopted, at least in that part, Miller's interpretation of the Second Amendment, to say, OK, well, machine guns are or not commonly, to translate into this case, are commonly used in self-defense. Do you agree that the Second Amendment only protects the right to firearms for a specific lawful purpose of self-defense? I mean, there are a lot of cases to say that. Yeah, well, there are, I forget, aren't there three things the Supreme Court reiterates? Self-defense. I feel like there's a few other things. But yeah, I mean, it's mainly, mainly self-defense. I mean, that's what we're talking about here. So my only question is, really, how can we affirm? I mean, you make really good arguments, as you always do. But how in the world could we say that, OK, well, we can look at this record, and we can affirm based on this record, because we can determine that it is reasonable for a district court to infer from the record that the 170,000 people that are registered owners of machine guns are not members of the Crips. They're not collectors. They're not people that are YouTubers that go around boasting about their ability to use these automatic weapons. These are people, like you are inferring, that are people like you and I that are trying to protect ourselves against intruders. And I don't know how in the world I can infer that. And I'm just being honest about my struggle with how to affirm. Well, I guess if you think this case turns on that, that you would need some sort of factual finding. And if we don't have that, do you think I'm wrong to look at it that way? I think I do think you're wrong. Well, I don't think you should. I don't think the In Common Use Today test helps in this particular circumstance because of 922-0 itself. It just seems very odd to me that you would ask whether a gun that is prohibited from being possessed is in common use today. That doesn't make sense to me. How do you square that with 627 of Heller? I mean, surely Heller wouldn't, in the 21st century, wouldn't say that we're going to, in fact, he said this in the brief, that we're not going to, no Supreme Court, no judge would say, OK, we're not going to protect machine guns because in 1791, machine guns were not in common use. So how do you interpret 627 otherwise? To talk about, I mean, I thought that was your whole point on preservation. I mean, it's dicta. It's unreasoned. I don't exactly know what it means when it's applied to these guns. I mean, that's my basic point, is with respect to the two firearms at issue here, I don't know what that dicta means. I don't think it addresses it. That takes me back to something we were talking about earlier, to bring the Bruin framework back into the picture. The court, this court in Rocky Mountain, said that at Bruin step one, a court must determine whether the item at issue is an arm that is in common use for self-defense. Why doesn't that foreclose an argument that common use is a Bruin step two inquiry? Well, so that is the discussion of Bruin talking about Heller? Well, it's Rocky Mountain talking about Bruin. Oh, correct. Yeah. That's tough. I mean, I don't disagree that one way to read Rocky Mountain is that it's putting the in common use test under step one. I don't disagree with that. I don't know that I agree that it should have done that, but I think it maybe did that. Now, I sort of agree with the government. I'm not entirely sure I'm convinced why it matters what step we're in. Well, doesn't it matter because step two, the burden is on the government? Yeah. Step one, the burden is on you. Well, so I guess the way I've said this in the brief is that because the in common use today test is still framed in historical terms to some extent, the burden would be on the government. I mean, in my mind, the burden for the plaintiff or the challenger to the defendant, the person challenging the law to show that their conduct falls within the Second Amendment is simple. It's the textual part of it. I mean, this is a bearable arm. Therefore, it's protected by the Second Amendment. Government, go. Justify the regulation. That's how it seems to work to me.  Yes. I think that's what Bruin says. Now, whether Rocky Mountain gun owner says that or not, I don't know. I will tell you Jackson, this case that was published, I didn't 28J it, but a couple of months ago on section 922G9, it does frame the first step inquiry as a textual inquiry. Do you think Heller's step one is the same as Bruin's step one? Because Judge Brooms and you seem to be framing step one as a pure textual inquiry. And that, you tell me if I'm wrong, but I don't think Heller suggests that at all. Heller is pretty clear, I think, in saying, well, step one of the Heller test is text as informed by history. And see, and I don't think that's academic. Because I think the reason we're all here is Judge Brooms just looked at step one as saying, OK, well, if you can hold it in your hand, it's a bearable arm. OK, now we're at step two. Well, your adversary doesn't think that's right, and I don't even think you think that that's right. We do have to look at more than whether or not you can hold, like Judge McHugh says, a nuclear weapon in your hand. And say, OK, well, that's a step one because it's a bearable arm. So that's a long, my question, actually, the rambling was long, but the question's short. Is Heller step one the same as Bruin step one? I don't think they are. Do you think they are? I mean, I don't know that there are steps in Heller. I believe the step aspect of Bruin was an interpretation of Heller and a rejection of means and scrutiny somehow. Yeah. I do want to note on Judge Brooms' analysis, I do think he's right in this case with respect to these guns. I do think he is right to say these particular guns are bearable arms under the Second Amendment government just fire regulation. In this context, I do think he's right about that. OK. Maybe not in some other context, maybe not in the canon context, but as an as applied challenge in this context, I don't see a problem with that.  I'm way over time, sorry. Well, if it's banning machine guns as a category, all of them, why does it matter if it's on its face or as applied? Because there are different types of machine guns that would affect. And if they're all, I mean, as I understand it, they're all illegal. If it's a machine gun, it's prohibited under 922-0. Correct. So the as applied challenge would focus on the type of machine gun. Right. But if we were to say that 922-0 is constitutional in banning the entire category of all machine guns, and your gun is a machine gun, does it really make any practical differences for purposes of analysis, whether we're looking at it as applied or on its face? Well, when you put it like that, no. But I think that puts the cart before the horse. I think in an as applied challenge, you have to look at the type of machine gun, because that's the challenge. Does that make sense? Well, I think you only have to look at if it makes a difference. Well, I mean, if you just think all. If there are some that are legal and some that are illegal, then we got to decide whether this one is which category it falls in. But if they're all illegal and they're constitutionally illegal, then it seems to me that they collapse. I mean, I don't disagree with that, but I just don't agree with the premise that they're all illegal, if that makes sense. But you're right. I mean, if you decide that every machine gun is not covered by the Second Amendment, I'm going to lose. Well, nobody's saying we don't care about it. Are we done here? I think so. Well, I guess, well, to be fair, Mr. Klasser, why don't you take at least a couple more minutes, which I'm sure will turn into a couple more. Thank you, Judge Mattson. I'll try to be brief. So if I could just have a clarification and a couple of points. Going back to Judge Bacharach's first question about self-defense, the very last line, Judge Bacharach on page 624 of Heller talks about the traditional militia being formed by the pool of men bringing arms in common use at the time for lawful purposes like self-defense. And then if you go back to page 599 in Heller, the court mentioned the militia purpose and said that probably at the founding, people cared more about self-defense and hunting. So the government's view here is not that any lawful purpose aside from self-defense is we can take someone's guns away because they're not using it for self-defense. Rather, our point is that if you look at the universe of lawful purposes, machine guns are not well adapted to those uses, whether it's self-defense, hunting. And I'm talking here about lawful uses by individual citizens, not obviously by the military. And I think this goes to another point is that courts have understood the in common use inquiry essentially to be a flip side of the coin of the dangerous and unusual inquiry. Unusual itself seems to include a common use inquiry. And it's just essentially undisputed that machine guns are highly dangerous and not the kind of weapons that one ordinarily uses. Again, ordinary is important. We could all think of examples of using a machine gun, a hand grenade for purposes like self-defense. But they're not typically possessed for those purposes. And that's why, again, the courts have unanimously concluded that they're not protected by the Second Amendment. And then if I could, just going back to the as-applied challenge and the particular types of firearms here, I think there's just a factual dispute between Mr. Hansmeier and myself regarding the weapon that's involved here. It's an AR-15 that's been converted to fire automatically all the time. An M16, which Heller referred to, is effectively the AR-15 platform with a selective fire mechanism that allows it to fire semi-automatically part of the time and fully automatically the rest of the time. We don't think that there's any reason to carve out the particular type of automatic firearms here in this case and conclude that they are protected while machine guns and M16s more generally are not protected. By the way, is there a good description in the record of what you just said? Your Honor, the district court held an evidentiary hearing to try to get an idea regarding the type of firearm here. But that evidentiary hearing, unfortunately, isn't particularly illuminating. The defense did include in their brief a picture of the firearm. And some of this testimony came out, but there wasn't an extended discussion. I admit I'm relying more on just sort of general knowledge regarding firearms. And I think that was what the Supreme Court was doing as well when it mentioned M16s. In Bianche, they have a pretty good discussion of the machine guns and AR and M16s. Yes, so the Fourth Circuit and the Seventh Circuit have gone into this in some depth in their cases involving AR-15 bans. Thank you. Thank you. Case will be submitted.